*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MSL Minor.

---

ASHLEY LUNN LAPOINT and JEREMY
WALLACE BAKER,

          Petitioners-Appellants,

v

ALEXANDER SAINTCLAIR,

          Respondent-Appellee.

FOR PUBLICATION
June 13, 2024
9:00 a.m.

No. 368581
Livingston Circuit Court
Family Division
LC No. 2022-004790-AY

---

Before: MARKEY, P.J., and RIORDAN and CAMERON, JJ.

MARKEY, P.J.

In this stepparent-adoption case concerning the minor child, MSL, petitioners, Ashley LaPoint and Jeremy Baker, appeal by right the trial court's order granting summary disposition in favor of respondent, Alexander Saintclair, under MCR 2.116(C)(10). LaPoint and Saintclair married in 2012 and divorced in 2016. MSL was born of the marriage in 2014. LaPoint and Baker married in 2021. And in 2022, they petitioned the trial court to terminate Saintclair's parental rights to MSL and to name Baker the child's adoptive father. The trial court ruled as a matter of law that petitioners could not establish the requirements of MCL 710.51(6)(a) as necessary to terminate Saintclair's parental rights, concluding that Saintclair had provided MSL with regular and substantial support in the form of healthcare insurance for the requisite two-year period. Therefore, the trial court summarily denied and dismissed the stepparent-adoption petition. We hold that making healthcare insurance available to a child does constitute an act of providing "support" for purposes of MCL 710.51(6)(a) and that the trial court correctly ruled that Saintclair provided MSL with "regular" support in the form of insurance during the pertinent two-year window. But, nonetheless, we reverse and remand for further proceedings with respect to whether that support was "substantial" in light of Saintclair's overall ability to provide support.

-1-

# I. STATUTORY OVERVIEW

To give context to our discussion of the factual and procedural history of this case, we begin with an examination of the statutory provision that controls the analysis in this case, MCL 710.51(6), which states:

> If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if a parent having custody of the child according to a court order subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:
>
> (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition. A child support order stating that support is $0.00 or that support is reserved shall be treated in the same manner as if no support order has been entered.
>
> (b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

"[A] petition for termination of parental rights and for stepparent adoption should only be granted if both subsection (6)(a) and subsection (6)(b) of MCL 710.51(6) are satisfied." *In re NRC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362915); slip op at 5. In this case, Saintclair's motion for summary disposition did not concern or draw into dispute MCL 710.51(6)(b); therefore, in light of our ruling, that issue remains open and pending on remand.[1] Accordingly, summary disposition hinged on whether there existed a genuine issue of material fact regarding the establishment of MCL 710.51(6)(a).

---

[1] Petitioners, in their response to Saintclair's motion for summary disposition, argued, in part, that there was no genuine issue of fact that Saintclair regularly and substantially failed or neglected to visit, contact, or communicate with MSL, despite having the ability to do so, for a period of two years or more before the stepparent-adoption petition was filed. See MCL 710.51(6)(b). Because the trial court concluded that Saintclair was entitled to summary disposition with respect to MCL 710.51(6)(a), there was no need for the court to reach petitioners' argument under MCL 710.51(6)(b).

## II. FACTUAL AND PROCEDURAL HISTORY

Before Saintclair and LaPoint met, Saintclair enlisted in the United States Army in 2011, and he sustained injuries during his military service.[2] He was hospitalized for his injuries. LaPoint was a nurse at the hospital where Saintclair received treatment, and she provided care for him. The two then dated for a short time before marrying in 2012. LaPoint was 26 years old and Saintclair was 19 years old when they married. Saintclair was discharged from the Army in December 2013 due to his injuries. According to LaPoint, Saintclair received $1,200 per month from the military in disability payments following his discharge, which benefit he will receive for the remainder of his life. Additionally, as part of his compensation package from the military, Saintclair received a healthcare insurance policy through Humana Military / TRICARE ("Humana Policy"). MSL was born in September 2014. The Humana Policy covered MSL.

In March 2016, Saintclair was convicted of various crimes in North Carolina.[3] Saintclair was imprisoned in the North Carolina correctional system for his crimes. For a short period of

---

[2] We derive some of the facts from affidavits executed by LaPoint and Saintclair. In Saintclair's affidavit, he averred that all of the facts in his motion for summary disposition and accompanying brief were true to the best of his information, knowledge, and belief). MCR 2.119 provides, in relevant part:

> (1) If an affidavit is filed in support of or in opposition to a motion, it must:
>
> (a) be made on personal knowledge;
>
> (b) state with particularity facts admissible as evidence establishing or denying the grounds stated in the motion; and
>
> (c) show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit.

Saintclair's affidavit did not state with particularity any facts. Indeed, regardless of particularity, the affidavit itself simply did not state facts; rather; it just broadly incorporated by reference whatever facts were in the summary disposition motion and brief. We question whether Saintclair's affidavit complied with the dictates of MCR 2.119(1)(b) and (c). Nevertheless, in resolving this appeal, we shall accept and consider Saintclair's affidavit.

[3] Although the parties do not allude to the specifics of his crimes, Saintclair was convicted of first-degree burglary, robbery with a dangerous weapon, conspiracy to commit robbery, and safecracking. *State v Saint Clair*, 253 NC App 841 (table); 799 SE2d 909 (table), unpublished opinion by the North Carolina Court of Appeals (Docket No. COA16-836); unpub op at 1. The safecracking conviction was vacated on appeal. Unpub op at 2.

time, LaPoint and Saintclair communicated by phone and letters while he was incarcerated.[4] Saintclair contended that these communications included MSL and that he sent his daughter an array of personal letters. Saintclair claimed that LaPoint and MSL visited him in prison, and LaPoint acknowledged that on one occasion she did visit Saintclair while he was incarcerated and that MSL accompanied her.

In December 2016, while Saintclair remained imprisoned, LaPoint filed for divorce in the Wayne Circuit Court. On May 8, 2017, a judgment of divorce was entered by the circuit court. LaPoint was awarded sole legal and physical custody of MSL. Parenting time for Saintclair was reserved until such time that he petitioned the circuit court for visitation. With respect to child support, the judgment provided:

> IT IS FURTHER ORDERED AND ADJUDGED that Defendant Father not shall[5] pay child support to Plaintiff Mother due to his incarceration at the Alexander Correctional Institute. Upon his release, Defendant Father shall advise the Friend of the Court of his address and he shall obtain employment forthwith.

The divorce judgment further provided that "[a] Uniform Child Support Order [UCSO] is submitted concurrently with this Judgment, and it is merged with and incorporated by reference into and made part of this Judgment." The circuit court additionally ordered in the judgment of divorce "that Plaintiff Mother and Defendant Father shall provide health care coverage for the minor child so long as medical insurance is available as a benefit of employment at reasonable cost." The divorce judgment also required LaPoint to pay 84.1% and Saintclair to pay 15.9% of MSL's uninsured ordinary healthcare expenses. The UCSO reflected the zero-dollar amount in child support and the division of obligations in relation to uninsured medical expenses. Somewhat contrary to the language in the judgment of divorce, the UCSO indicated that LaPoint and not Saintclair "shall maintain health-care coverage through an insurer . . . when that coverage is available at a reasonable cost." The UCSO further stated that the child support provisions did not follow the MCSF. An attached support-calculation report revealed that application of the MCSF would have required Saintclair to pay $217 to LaPoint in monthly base child support. The report provided that Saintclair had $18,500 in gross annual income and that LaPoint's gross annual income was $114,400.

In her affidavit, LaPoint averred that she changed her employment in 2017 and that as part of her employment benefits, she obtained medical insurance in January 2018 through a United Healthcare Policy ("UHC Policy"), covering her and MSL. LaPoint claimed that all of MSL's

---

[4] LaPoint did aver in her affidavit that Saintclair's phone calls usually entailed him making threats against her in an effort to intimidate LaPoint.

[5] Most of the child support provision was handwritten by the circuit court after it had blacked out the existing typed language that had included a set amount of support. The court wrote in the word "not," indicating its placement between "Father" and "shall." Clearly, the circuit court meant to write, "Father shall not." The original language apparently set forth a dollar amount consistent with the Michigan Child Support Formula (MCSF), as will be discussed below.

physicians were deemed "out of network" under Saintclair's Humana Policy, making MSL's healthcare costs considerably more expensive than under the UHC Policy. But UHC declined to cover MSL's medical expenses, contending that the Humana Policy was the primary insurer or was otherwise the responsible insurer.[6] Thus, according to LaPoint, the Humana Policy was of no benefit to her and was costing her money because it precluded application of the UHC Policy. LaPoint asserted in her affidavit that because of these circumstances, the Humana Policy was canceled in 2018. Documents from Humana contained in the lower court record appear to reveal that MSL was disenrolled from coverage under the Humana Policy in 2018, but LaPoint maintains that Saintclair reinstated the policy as to MSL. According to Saintclair, however, the Humana Policy provided insurance coverage for MSL without interruption throughout Saintclair's incarceration, which ended in January 2023, and that the policy remained in place thereafter.[7] Despite the lack of clarity in the record about any cancelation and reinstatement of the Humana Policy relative to MSL, there is no dispute between the parties that during the two-year lookback period under MCL 710.51(6)(a), the Humana Policy was available to provide coverage for MSL's healthcare expenses.

On August 1, 2021, LaPoint married Baker. On July 12, 2022, LaPoint filed a supplemental petition and affidavit to terminate Saintclair's parental rights to MSL. On July 14, 2022, LaPoint and Baker filed a petition for stepparent adoption. With respect to the two-year period immediately preceding the filing of the petitions, LaPoint averred in her affidavit that Saintclair did not pay any child support even though he received a monthly military disability benefit of $1,200, that MSL was covered under the UHC Policy, that the Humana Policy "was of no benefit," and that Saintclair did not in any form or manner communicate or have contact with MSL. Saintclair asserted that he supported or assisted in supporting MSL during the two-year period by providing her with healthcare insurance.

Saintclair moved for summary disposition under MCR 2.116(C)(10) on September 21, 2023, arguing that there was no genuine issue of fact that he had provided healthcare insurance for MSL for two or more years preceding the filing of the termination petition.[8] Petitioners, therefore, could not satisfy MCL 710.51(6)(a), thereby requiring dismissal of the termination and stepparent-

---

[6] Specifically, LaPoint averred as follows: "United Health Care, however, told me that the Military provided insurance was going to pay for . . . [MSL's] health care expenses and, therefore, United Health Care declined to pay the medical bills." At the hearing on the motion for summary disposition on October 26, 2023, counsel for LaPoint repeatedly posited that LaPoint did not even know about the Humana Policy. That contention is belied by LaPoint's own affidavit.

[7] An explanation of benefits submitted as part of Saintclair's motion for summary disposition indicated that MSL received medical services in August 2020 that were covered, in part, by the Humana Policy.

[8] Back on July 14, 2023, Saintclair filed a motion in the Wayne Circuit Court seeking parenting time with MSL on a 50%-50% basis. LaPoint asserted, absent any evidence or argument to the contrary, that Saintclair did not appear for a scheduled hearing on the motion and that the motion was therefore dismissed.

-5-

adoption petitions. Saintclair contended that the term "support," as used in MCL 710.51(6)(a), encompasses "medical support," which in turn includes healthcare insurance coverage. Saintclair did not pose any argument under MCL 710.51(6)(b).

In petitioners' response to the motion for summary disposition, they first argued that the motion was premature because they needed discovery regarding whether Saintclair had the ability to pay support during the two-year lookback period. Petitioners indicated that they wished to learn the extent of Saintclair's income during the two-year period.[9] They maintained that Saintclair received at least $1,200 per month in military disability payments and likely earned additional income while working in the prison. With respect to Saintclair's argument that he provided support to MSL in the form of healthcare insurance, petitioners contended that Saintclair did not pay for the insurance, that he did not incur any detriment to or reduction in his benefits by providing insurance coverage to MSL, and that it was the military and not Saintclair who provided MSL with coverage under the Humana Policy. Moreover, according to petitioners, the healthcare insurance under the Humana Policy provided no benefit to MSL after 2017, considering that beginning in January 2018, MSL had coverage through the UHC Policy, which provided better healthcare coverage and lower out-of-pocket costs than the Humana Policy. Petitioners devoted the remainder of their response brief to arguing that they were entitled to summary disposition under MCR 2.116(I)(2) because aside from providing no support to MSL during the two-year lookback period for purposes of MCL 710.51(6)(a), there was no question of fact that Saintclair regularly and substantially failed or neglected to visit, contact, or communicate with MSL, despite having the ability to do so, for the pertinent two-year period.

The trial court entertained oral argument on Saintclair's motion for summary disposition on October 26, 2023. Ruling from the bench, the trial court, construing MCL 710.51(6)(a), first observed that because the divorce judgment and UCSO stated that support was zero, the court had to discern whether Saintclair had the ability to provide regular and substantial support for MSL during the two-year period immediately preceding the filing of the stepparent-adoption petition. The trial court rejected petitioners' argument that no support is provided if a child does not actually enjoy the benefit from an act of support performed by the noncustodial parent. The court illustrated its point with a hypothetical in which a custodial parent receives an envelope of cash designated for a child and sent by the noncustodial parent for purposes of support but then returns the money to the noncustodial parent absent any benefit to the child. According to the trial court, in this case, Saintclair provided a medical-coverage insurance benefit to MSL, and it was irrelevant whether LaPoint or the child took advantage of the benefit. The trial court ruled that Saintclair provided a benefit to MSL in the form of healthcare coverage under the Humana Policy, that this benefit was regular and substantial during the two-year lookback period, and that the benefit constituted support and did not need to be cash or money to satisfy MCL 710.51(6)(a). The trial court concluded that there was no genuine issue of material fact that Saintclair had provided support for MSL such that it precluded petitioners from being able to satisfy MCL 710.51(6)(a); therefore,

---

[9] At the hearing on the motion for summary disposition, it was divulged that Saintclair's deposition had been taken the day before the hearing. The lower court record reflected that very combative discovery took place between the parties, including in regard to phone communications; however, discovery issues are not involved in this appeal.

Saintclair's parental rights could not be terminated and the petition for stepparent adoption had to be summarily dismissed. By order dated October 26, 2023, the trial court granted Saintclair's motion for summary disposition and denied and dismissed the petitions for stepparent adoption and to terminate Saintclair's parental rights. Petitioners now appeal by right.

## III. ANALYSIS

### A. PARTIES' ARGUMENTS ON APPEAL

Petitioners first argue on appeal that because the support amount contained in the divorce judgment and UCSO set Saintclair's monthly obligation at zero, the trial court correctly indicated that it was necessary to examine under MCL 710.51(6)(a) whether Saintclair had provided MSL with regular and substantial support and his ability to do so. The trial court, however, then failed to assess Saintclair's ability to pay support and failed to take into consideration his military disability income. These failures, according to petitioners, constituted error. They further contend that there is no incarcerated-parent exception to the requirement in MCL 710.51(6)(a) that the noncustodial parent pay regular and substantial support if he or she has the ability to do so. Petitioners next maintain that the determination of what amount constitutes "substantial" support is relative, depending on the ability to pay and the incomes of the parents. Petitioners argue that a proper benchmark can be set by applying the MCSF, but, again, the trial court did not even contemplate Saintclair's ability to pay or the incomes earned by LaPoint and Saintclair. Finally, petitioners assert that the coverage under the Humana Policy "was of no support and certainly was not substantial support." To bolster their proposition, petitioners contend that LaPoint was ordered to supply healthcare insurance for MSL under the divorce judgment and UCSO, that she did so through the UHC Policy, that compared to the UHC Policy, the Humana Policy was of lesser value and created greater out-of-pocket expenses, for which Saintclair never contributed despite being ordered to pay 15.9% of those expenses, and that Saintclair incurred no costs associated with maintaining the Humana Policy.

In response, Saintclair maintains in his brief on appeal that there is no genuine issue of material fact that he had the ability to provide healthcare insurance for MSL and that he did in fact provide such coverage for her during the pertinent two-year period and beyond. Saintclair states that the judgment of divorce provided that he and LaPoint were obligated to provide healthcare insurance for MSL if available as a benefit of employment at a reasonable cost. And Saintclair argues that he fulfilled the obligation through the Humana Policy, including during the two-year lookback period. Saintclair notes that the Michigan Adoption Code, MCL 710.21 *et seq.*, under which MCL 710.51 falls, does not define the term "support." Therefore, Saintclair cites language in the Friend of the Court Act, MCL 552.501 *et seq.*, in support of his stance that "support" encompasses healthcare coverage.[10] With respect to petitioners' assertion that Saintclair absorbed

---

[10] Specifically, Saintclair relies on MCL 552.519(3)(a)(*vi*), which required the state friend of the court bureau to create the following:

> A formula to be used in establishing and modifying a child support amount and health care obligation. The formula shall be based upon the needs of the child and the actual resources of each parent. The formula shall establish a minimum

no cost to carry the Humana Policy, he argues that there was indeed a cost, i.e., his performance of military duties and service to his country. Saintclair next contends that contrary to petitioners' argument, the trial court did evaluate his ability to provide support by finding that he had the capacity to cover MSL with healthcare insurance. Saintclair also challenges petitioners' contention that the Humana Policy did not provide any benefit to MSL, claiming that there is no language in MCL 710.51(6)(a) requiring that the child at issue actually benefit from the support. Saintclair revisits some of the hypotheticals bandied about at summary disposition. Next, Saintclair posits that the Wayne Circuit Court had found good cause not to order the payment of child support, which issue LaPoint never appealed in the divorce case, and that the law allowed deviation from the MCSF. Therefore, according to Saintclair, we should reject petitioners' argument that Saintclair had the ability to provide support beyond that which he was legally obligated to provide. Saintclair contends that the $217 monthly support amount calculated under the MCSF during the divorce litigation is entirely irrelevant to this stepparent-adoption case and appeal. In sum, Saintclair maintains that the trial court did not err by concluding as a matter of law that the healthcare insurance that he provided to MSL was regular and substantial after "weighing testimony, arguments, and evidence offered through exhibits."

## B. STANDARD OF REVIEW AND PRINCIPLES OF SUMMARY DISPOSITION

"The petitioners in a stepparent adoption proceeding have the burden of proving by clear and convincing evidence that termination of the noncustodial parent's rights is warranted." *In re NRC*, ___ Mich App at ___; slip op at 2. Had this case been decided after trial or an evidentiary hearing, this Court would review the trial court's factual findings for clear error, assessing whether we had a definite and firm conviction that a mistake was made. *Id.* But this case was decided on the basis of a motion for summary disposition, and we review de novo a trial court's ruling on a motion for summary disposition. *In re Casey Estate*, 306 Mich App 252, 256; 856 NW2d 556 (2014).[11] This case requires us to construe MCL 710.51(6)(a), and issues of statutory construction are subject to de novo review. *Id.* De novo review "means that we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019).

---

threshold for modification of a child support amount. The formula shall consider the child care and dependent health care coverage costs of each parent. The formula shall include guidelines for determining which parent is required to maintain health care coverage for the child and include a presumption for determining the reasonable cost and accessibility of health care coverage. . . . .

[11] We note that parental-termination cases generally do not allow for motions for summary disposition. See MCR 3.901(A)(1) and (2); *In re PAP*, 247 Mich App 148, 153; 640 NW2d 880 (2001) ("the trial court erred in concluding that MCR 2.116[C][10] applies to child protective proceedings"). But termination of parental rights in this case is governed by the court rules on adoption, MCR 3.800 *et seq.*, and MCR 3.800(A) provides for the general application of the Michigan Court Rules to such proceedings, unless otherwise modified by the subchapter. And there is no provision in subchapter 3.800 barring motions for summary disposition. MCR 3.800(B)(3) expressly references proceedings brought under MCL 710.51(6).

In *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506-507; 991 NW2d 230 (2022), this Court recited the principles that govern the analysis of a motion brought pursuant to MCR 2.116(C)(10):

> MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).
>
> A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party. Speculation is insufficient to create an issue of fact. A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. [Quotation marks, citations, and brackets omitted.]

MCR 2.116(I)(2) provides that "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

## C. STATUTORY CONSTRUCTION PRINCIPLES

In *In re Casey Estate*, 306 Mich App at 256-257, this Court set forth the well-established rules of statutory construction:

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In construing a statute, this Court should give every word meaning, and should seek to avoid any

construction that renders any part of a statute surplus or ineffectual. It is well established that to discern the Legislature's intent, statutory provisions are not to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole.  [Quotation marks and citations omitted.]

## D.  DISCUSSION

In a stepparent-adoption proceeding, MCL 710.51(6) governs the termination of the noncustodial parent's rights.  *In re ALZ*, 247 Mich App 264, 272; 636 NW2d 284 (2001).  In *In re NRC*, this Court recently explained:

> The purpose of MCL 710.51(6) is to foster stepparent adoptions in families where the natural parent had regularly and substantially failed to support or communicate and visit with the child and refuses to consent to the adoption. To prove that termination of the noncustodial parent's rights is warranted, a petitioner must satisfy the requirements of subsection (6)(a) and subsection (6)(b) of MCL 710.51(6) by clear and convincing evidence. In applying MCL 710.51(6), courts are to look at the two-year period immediately preceding the filing of the termination petition. [*In re NRC*, ___ Mich App at ___; slip op at 3 (quotation marks, citations, and alteration brackets omitted).]

This case turns on the application and construction of MCL 710.51(6)(a), which, again, provides as follows:

> The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition. A child support order stating that support is $0.00 or that support is reserved shall be treated in the same manner as if no support order has been entered.

The plain and unambiguous language of MCL 710.51(6)(a) reflects that the Legislature contemplated two broad settings with respect to support, one in which there is no underlying support order or an order does exist but provided for either "$0.00" in support or reserved on the issue of support, and the second in which there exists an underlying support order that sets support in any amount above zero.[12]  There is no dispute that the instant case involves the former scenario. In *In re SMNE*, 264 Mich App 49, 54-55; 689 NW2d 235 (2004), this Court construed MCL 710.51(6)(a) in the context of a situation wherein there existed an underlying order reserving on the issue of child support:

---

[12] The *In re NRC* panel construed the language regarding substantial compliance with a support order that required a monthly payment, holding that "under MCL 710.51(6)(a), a parent substantially complies with a child support order when they have made a considerable quantity of the payments required by the order." *In re NRC*, ___ Mich App at ___; slip op at 4.

On the basis of our analysis of the foregoing cases we conclude that if there was indeed a support order in place addressing respondent's duty and ability to pay support for the child by requiring payment of some sum of money, the trial court could not properly inquire into respondent's present ability to pay support under the Adoption Code. In reviewing both the statutory language and the pertinent published decisions, we also conclude that the relevant sections of MCL 710.51(6) are essentially yardsticks to be used to measure the noncustodial parent's interest in being a parent as it pertains to permitting termination of parental rights. But, to be an effective yardstick, the test must measure something; therefore, if an order reserving or holding in abeyance the establishment of a sum of money for support is a "support order" within the meaning of the second clause of subsection 6(a), that measure is meaningless. Moreover, . . . the amount of support should not be litigated again under the first clause of subsection 6(a), but it does not preclude a conclusion that an order reserving or holding in abeyance a determination of the amount of the noncustodial parent's child support obligation is not a "support order" within the meaning of subsection 6(a). Thus, we find that the plain language of the provision of the divorce decree in the instant case pertaining to support and the use of common sense require a conclusion that respondent was not ordered to pay child support. Indeed, the court "reserved" the issue for another time because at the time of the divorce decree respondent was unemployed. Consequently, because the court did not set forth some sum of money that respondent was required to pay for child support, there is no support order in place under the circumstances of this case, and the trial court properly inquired about respondent's ability to support her child under the first clause of subsection 6(a).

In this case, there is no dispute that Saintclair did not provide "support" in the form of payments of money during the two-year period preceding the filing of the stepparent-adoption petition. Instead, he relied on the availability of the Humana Policy to cover MSL's healthcare needs during the relevant two-year span for purposes of establishing that he provided MSL with regular and substantial support. We hold that making healthcare insurance available for a child plainly constitutes an act in which "support" is provided to the child for purposes of MCL 710.51(6)(a). This is true regardless whether the custodial parent utilizes the support or insurance for the benefit of the child and regardless of the circumstances under which the noncustodial parent acquired the healthcare insurance in the first place. MCL 710.51(6)(a) simply does not delineate, describe, or limit the form of the "support" that must be provided to satisfy the provision. We additionally rule that because the healthcare insurance was available to MSL for the entire two-year lookback period, Saintclair provided "regular" support. On that matter, we find no error by the trial court.

With respect to the question whether the support was "substantial," the trial court found as a matter of law that providing the healthcare insurance to MSL was indeed substantial; however, the court did not appear to take into consideration or evaluate the evidence that Saintclair received $1,200 a month in military disability payments and possibly additional prison income given that his gross annual income back in 2017 was $18,500. In other words, the trial court did not assess Saintclair's overall ability to support MSL. Under the circumstances posed in this case, MCL 710.51(6)(a) requires contemplation of a parent's ability to provide support. This would entail consideration of the noncustodial parent's income, expenses, and general financial status and

situation.[13] And measuring whether support is "substantial" in any given case necessarily requires an examination of the noncustodial parent's income and finances. For example, if a parent provided a child $500 a month in support on a monthly income of $800, the support would easily be characterized as "substantial." But if that same parent provided $500 in monthly support on a monthly income of $10,000, it would be difficult to reach the conclusion that the support was substantial. MCL 710.51(6)(a) effectively mandates an analysis in which the "ability to support" a child sets the parameters of what constitutes "regular and substantial support." The trial court erred by not conducing an analysis and examination of Saintclair's ability to support MSL in relation to the question whether simply providing her with healthcare insurance was "substantial."

We do recognize a certain level of unfairness in *potentially* punishing Saintclair for not making support payments when the divorce judgment and UCSO did not require him to make any payments, but termination of parental rights in stepparent-adoption cases also requires proof of MCL 710.51(6)(b), revealing a disregard for and disinterest in the child. Moreover, fixing public policy is generally the province of the Legislature and not the Judiciary. See *Myers v City of Portage*, 304 Mich App 637, 644; 848 NW2d 200 (2014) (despite the unfairness of legislation, making public policy is the province of our Legislature).

Saintclair suggests that we should abide by the Wayne Circuit Court's finding that there was good cause not to order child support payments. We reject this argument. First, the divorce judgment was entered back in 2017, approximately three years before the two-year lookback period even commenced. More importantly, Saintclair's position would completely circumvent MCL 710.51(6)(a) with respect to circumstances in which a support order stated that support is reserved or is $0.00, because following Saintclair's logic would *always* preclude a finding that the noncustodial parent failed or neglected to provide regular and substantial support. See *In re Casey Estate*, 306 Mich App at 257 (we should seek to avoid an interpretation that renders any part of a statute surplus or ineffectual).

## IV. CONCLUSION

The trial court erred by not examining and considering Saintclair's ability to provide support for purposes of determining whether he provided "substantial" support for MSL during the two-year lookback period. The issue is to be entertained on remand, whether at trial or in a new motion for summary disposition.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, petitioners may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Michael J. Riordan
/s/ Thomas C. Cameron

---

[13] We note that in *In re Caldwell*, 228 Mich App 116, 120-121; 576 NW2d 724 (1998), a conflict panel ruled that an incarcerated parent may still retain the ability to provide regular and substantial support and that an incarcerated-parent exception does not exist under the plain and unambiguous language of MCL 710.51(6)(a).